UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHILLIP POPE EVANS,

    Petitioner,

v.                                 Civil Action No. 15-13767-RGS

KELLY RYAN,

    Respondent.

REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS

November 13, 2017

On October, 26, 2015, Phillip Pope Evans petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Docket No. 1 (the "Petition"). On June 12, 2011, Evans was convicted of manslaughter, armed assault with intent to kill, and carrying a firearm without a license. He is currently serving a fifteen-to-twenty-year sentence in a Massachusetts correctional facility. Respondent Kelly Ryan ("Respondent") opposes the Petition. Docket No. 31.

Evans raises one claim in the Petition, alleging that his trial counsel did not provide him with constitutionally required effective assistance of counsel. Specifically, Evans contends that his counsel failed to consult and retain an expert in adolescent brain development who allegedly would have shown that Evans used reasonable force in exercising self-defense. Docket No. 1 at 5; Docket No. 2 at 23. For the reasons set forth below, I recommend that the District Judge DENY the Petition.

1

I.   PROCEDURAL HISTORY

Evans and co-defendant Oderto Mejia were charged and tried on five counts: murder in the first degree; carrying a firearm without a license; and three counts of armed assault with intent to murder. Supplemental Answer ("S.A.") 1-4. On June 2, 2011, after a month-long trial, a jury acquitted Evans and Mejia of first-degree murder, but found them guilty of the lesser-included offense of manslaughter, one count of the lesser-included offense of armed assault with intent to kill, and carrying a firearm without a license. S.A. 11, 197. The jury returned not guilty verdicts on the two remaining armed assault with intent to murder charges. Id.

On January 8, 2013, Evans filed a motion for a new trial and raised the same claim that forms the basis of this Petition—ineffective assistance of counsel. S.A. 131-196. On May 28, 2013, the trial court denied Evans' motion. S.A. 308-314. Subsequently, Evans appealed the denial of his motion for a new trial, and it was consolidated with his prior appeal of his conviction. S.A. 14. On February 6, 2015, the Appeals Court affirmed Evans' conviction and the order denying his motion for a new trial. S.A. 845-846. The Massachusetts Supreme Judicial Court ("SJC") declined to hear Evans' case on April 17, 2015. S.A. 35.

On October 26, 2015, Evans filed the instant Petition and Memorandum of Law in Support of His Writ of Habeas Corpus. Docket No. 1; Docket No. 2. On May 18, 2016, the Respondent filed an opposition. Docket No. 31.

II.   FACTUAL BACKGROUND

In affirming Evans' manslaughter conviction, the Appeals Court implicitly adopted the trial judge's factual findings regarding the commission of the crime and subsequent apprehension of Evans and his co-defendants. This Court may supplement the trial judge's presumptively

correct factual findings with other record facts consistent with those findings. See Yeboah-Sefah v. Ficco, 556 F.3d 53, 62 (1st Cir. 2009); Healey v. Spencer, 453 F.3d 21, 22 (1st Cir. 2006).

> On August 30, 2006, the defendants along with Steven Gilchrist, shot at and killed James Darosa as he sat in a Honda Civic on Clarence Street in Brockton, Massachusetts.[1] Mejia was nineteen years old and Pope Evans was seventeen years old at the time of the incident. James Darosa was sitting inside of the Honda Civic with his brother, Kevin Darosa, and two friends, Ruben Andrade and Decio Moeda. They were inside of the car smoking marijuana. Shortly after 10:00 p.m. that night, James Darosa opened the rear driver's side door to the Honda Civic. Ruben Andrade testified that he heard James Darosa scream, and he heard gunfire hit the car.[2] Two bullets struck James Darosa, and one bullet killed him. Ruben Andrade was also shot, but he survived.
>
> Pope Evans and Mejia claimed that as they were walking on Clarence Street, they saw a car ahead of them and noticed that the car's left rear passenger door was opened. They claimed that they heard some noises and saw and heard gunfire coming at them from the car. Pope Evans and Mejia eventually admitted to the police that they both fired their guns at the Honda Civic on the night at issue, but only in self-defense after they believed they were being shot at. Mejia testified at trial and claimed that he heard two shots and saw two flashes from what he believed was a firearm held by someone in the Honda Civic. Mejia said that he was afraid he was going to die, so he shot back, fired four or five times, and ran.

S.A. 308-309.

After the shooting, Evans, Mejia, and Gilchrist fled to Anse Saint Louis' nearby apartment, where Evans asked Saint Louis for a place to "lay low." S.A. 2450-2452. Saint Louis refused to allow the men into his apartment, but told them they could stay in his backyard.

---

[1] Stephen Gilchrist, was also charged in the shooting, but his case was severed from Evans' and Mejia's. S.A. 38, 608.

[2] Footnote 2 of Judge Chin's decision, inserted here, stated: "According to Ruben Andrade, James Darosa opened the back door to the Honda Civic to 'ash the blunt,' and that is when he heard gunshots." S.A. 309.

3

S.A. 2455. The following morning, police apprehended Evans, Mejia, and Gilchrist. S.A. 2425-2437. During the arrest, police recovered a .32 revolver from Evans and a loaded .44 magnum revolver and .32 Derringer pistol from Mejia. S.A. 2266-2269; 2594-2595. Ballistics evidence recovered from the scene of the shooting and from behind Saint Louis' apartment was consistent with the guns found on Evans and Mejia. S.A. 2752-2779. A bullet recovered from Darosa's body also was consistent with having been fired from a .44 magnum gun, similar to the gun recovered from Mejia. S.A. 2765-2767.

At trial, Evans and Mejia advanced a Commonwealth v. Bowden, 379 Mass. 472 (1980), defense, eliciting testimony on cross-examination that investigators had not tested the victim's clothing and hands for gunshot residue, nor had they tested the fabric of the Honda's seats.[3] S.A. 2494-2495, 2503. Attorneys for both defendants also presented evidence that allegedly showed police may have missed a bullet that pierced a drainage downspout located across the street from the shooting. The attorneys argued that this purported bullet hole supported their theory of self-defense because it suggested that before he was killed, the victim may have fired a shot at Evans and Mejia. S.A. 1911-1916. However, the origin of the hole was disputed, and no gun was ever recovered from the Honda or from any of the persons in it. S.A. 2358, 2600-2606.

---

[3] A Bowden defense seeks to introduce evidence that the police investigation of the crime was inadequate. See Commonwealth v. Silva-Santiago, 453 Mass. 782, 801 (2009) ("[T]he inference that may be drawn from an inadequate police investigation is that the evidence at trial may be inadequate or unreliable because the police failed to conduct the scientific tests or to pursue leads that a reasonable police investigation would have conducted or investigated, and these tests or investigation reasonably may have led to significant evidence of the defendant's guilt or innocence.").

4

After Evans was convicted, he, together with Mejia, filed a motion for a new trial, claiming that his attorney's failure to consult and retain the services of an adolescent brain development expert deprived him of his constitutional right to effective assistance of counsel. S.A. 309-10. They argued that such an expert would have presented evidence showing that the two men used a reasonable amount of force in exercising self-defense in light of their age and corresponding brain development. S.A. 310. In denying their motions, Massachusetts Superior Court Judge Richard Chin found that the defendants' trial counsel were "highly effective in representing the defendants and pursued an effective and reasonable strategy in their defense, that ultimately the jury, at least partially, agreed with." S.A. 313. While Evans contended that his expert would have shown that Evans' use of force should have been considered in light of a "reasonable adolescent standard," Judge Chin noted that Evans cited no case, and that he was unaware of any case, that would suggest the jury should have considered Evans' actions under such a standard. Id. Further, Judge Chin found that even if the jury had heard evidence regarding adolescent brain development, it would not have affected the outcome of the trial because any expert testimony would have been relevant only to Evans' subjective beliefs and would not have addressed the objective reasonableness of his actions. Id.

Before the Appeals Court, Evans renewed his ineffective assistance of counsel claim. In presenting his argument, Evans relied on three Supreme Court decisions, which found that in certain legal contexts juveniles are less culpable for their crimes than adults.[4] Commonwealth v.

---

[4] See Roper v. Simmons, 543 U.S. 551, 568–571 (2005) (sentencing a juvenile to death violated prohibition of Eighth Amendment to United States Constitution against cruel and unusual punishment); Graham v. Florida, 560 U.S. 48, 74 (2010) (sentencing a juvenile to life imprisonment without parole for a non-homicide crime violated the Eighth Amendment); Miller v. Alabama, 567 U.S. 460, 488 (2015) (sentencing a juvenile under age eighteen at the time of

Evans, 87 Mass. App Ct. 1104 (2015) (unpublished memorandum and order pursuant to Rule 1:28) (table, text in Westlaw). As such, Evans argued, by way of analogy from the so-called battered woman's syndrome, that juveniles are different from adults in the same way that individuals who have suffered from abuse are different from those who have not; therefore, juveniles should be entitled to expert testimony and jury instructions on those differences. Id. at *2. While the Appeals Court opined that the defendant put forth an "interesting and potentially important argument," the Court found that the argument "failed on its procedural posture." Id. The Appeals Court held that in order for an attorney's representation of a defendant to be constitutionally ineffective, it must fall below what might reasonably be expected of an ordinary fallible lawyer, and the Court found that Evans had failed to satisfy this burden. Id. In support of its decision, the Appeals Court noted that at the time of the trial only two of the Supreme Court cases cited by the defendant had been decided, and only one of those case mentioned adolescent brain science. Further, the defendant had not identified any self-defense or reasonable provocation case, in any State, decided prior to his trial where such science was put before the jury. Id.

III.    DISCUSSION

    A.    Habeas Corpus Standard of Review

The AEDPA presents a "formidable barrier" limiting the availability of habeas relief where state courts have adjudicated the merits of a prisoner's claims. Burt v. Titlow, 134 S.Ct. 10, 16 (2013). Evans may not obtain federal habeas relief under 28 U.S.C. § 2254(d) unless he

---

crime to mandatory life imprisonment without parole for any crime, including homicide, violated the Eighth Amendment).

can show that the Appeals Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In other words, state court decisions merit substantial deference.

As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011). If a state court's decision "was reasonable, it cannot be disturbed." Hardy v. Cross, 565 U.S. 65, 72 (2011); see Parker v. Matthews, 567 U.S. 37, 38 (2012) (emphasizing federal habeas courts may not "second-guess the reasonable decisions of state courts" (internal quotation and citation omitted)). When applying this strict standard, a court must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller–El v. Cockrell, 537 U.S. 322, 340-341 (2003).

The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Harrington, 562 U.S. at 100 ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference). For a habeas petitioner to prevail under this daunting standard, the state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court. Williams v. Taylor, 529 U.S. 362, 404–05 (2000); see Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). In a string of decisions summarily reversing grants of habeas relief by lower federal courts, the Supreme Court

7

has "repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law'" for purposes of § 2254(d)(1). Glebe v. Frost, 135 S.Ct. 429, 431 (2014); see, e.g., Lopez v. Smith, 135 S.Ct. 1, 4 (2014) (warning against using circuit precedent to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced" (internal quotation and citation omitted)); Matthews, 567 U.S. at 48 (faulting the Sixth Circuit for "consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the [state court's] decision").

However, decisions from circuit courts "may help inform the AEDPA analysis to the extent that they state the clearly established federal law determined by the Supreme Court." Grant v. Warden, Me. State Prison, 616 F.3d 72, 79 n. 5 (1st Cir. 2010) (quotation omitted). "In addition, factually similar cases from the lower federal courts may inform a determination of whether a state court decision involves an unreasonable application of clearly established Supreme Court jurisprudence, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns." Id. (internal citations and quotations omitted).

The "contrary to" prong is satisfied when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Williams, 529 U.S. at 405, or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result." Id. at 406 (internal citation omitted).

The "unreasonable application" prong is satisfied if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. When making the "unreasonable

application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles, 556 U.S. at 122. Once again, this assessment is limited to federal law as articulated by the Supreme Court, and not the lower federal courts. See Lopez, 135 S.Ct. at 4. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Matthews, 567 U.S. at 48.

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36–37 (1st Cir. 2002). Rather, relief is available only where a state court's "determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002); see also Harrington, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an . . . error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement").

Further, even if a state court decision is contrary to, or an unreasonable application of, established federal law, a petitioner is not entitled to habeas relief unless harm resulted. The standard for determining whether relief must be granted is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 551 U.S. 112,

121 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)); see also Connolly v. Roden, 752 F.3d 505, 510–11 (1st Cir. 2014).

B.  Sixth Amendment Right to Effective Assistance of Counsel

Evans, who was seventeen at the time of the crime, argues that he did not receive constitutionally effective assistance from his trial counsel because he failed to consult and retain the services of an adolescent brain development expert. This Court disagrees.

1.  Ineffective Assistance of Counsel Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to … have the Assistance of Counsel for his defense." U.S. CONST., amend. VI. The right to assistance of counsel implicitly includes the right to *effective* counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).

Clearly established federal law governing ineffective assistance of counsel claims is based primarily on the principles set forth in Strickland. Under the Strickland analysis, Evans must show that: (1) counsel's performance was deficient, i.e. counsel made errors so serious that counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment; and, (2) the deficient performance prejudiced the defense, i.e. counsel's errors were so serious as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687.

Not every lawyerly slip constitutes ineffective assistance of counsel for Sixth Amendment purposes. Id. at 693. "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [should] be made to eliminate the distorting effects of hindsight." Id. at 689. This Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, that is, the defendant must overcome the

presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1995)).

To satisfy the first prong of the Strickland test, Evans must show that trial counsel's performance was deficient to the point of being "objectively unreasonable." See United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993); Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012). Reasonable conduct falls "within the range of competence demanded of attorneys in criminal cases." United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978) (quoting McMann v. Richardson, 397 U.S. 759, 770-71 (1970)). In other words, performance is constitutionally deficient "only if no competent attorney would have acted as [counsel] did." Companonio, 672 F.3d at 110.

To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." Harrington, 562 U.S. at 111. Rather, "the likelihood of different a result must be substantial, not just conceivable." Id. at 112.

Although the Appeals Court did not cite Strickland, it evaluated counsel's performance under the legal rule set forth in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), which the First Circuit has identified as "functionally identical to the federal standard." Mello v. DiPaulo, 295 F.3d 137, 144 (1st Cir. 2002) (citing Scarpa v. DuBois, 38 F.3d 1, 7 n. 4 (1st Cir. 1994); Ouber v. Guarino, 293 F.3d 19, 35 (1st Cir. 2002)).

Accordingly, the pivotal issue for this Court is whether the Appeals Court decision was reasonable under the Strickland standard. Harrington, 562 U.S. at 101. "This is different from asking whether defense counsel's performance fell below Strickland's standard." Id. "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Id. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Because the Strickland standard is a general one, the range of reasonable applications of Strickland is substantial. Harrington, 562 U.S. at 105. Further, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id. at 785. The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. Id. at 788 (internal quotations and citations omitted).

2. Discussion

The role of a federal habeas court in evaluating whether counsel's performance was deficient is to view the performance subjectively from the point of view of trial counsel, and with a deferential slant with regard to professional judgment. Ouber, 293 F.3d at 25. "[A] reviewing court must not lean too heavily on hindsight" and should review a tactical decision on the basis of what counsel actually knew or should have known at the time they made the decision. Id. (citing Bell v. Cone, 535 U.S. 685, 701 (2002)). A court "must respect counsel's strategic choices, recognizing that 'the law does not require counsel to raise every available non-frivolous defense." United States. v. Arias, 94 F. Supp. 3d 93, 102 (D. Mass. 2015) (28 U.S.C. § 2255 case) (quoting Knowles, 556 U.S. at 127).

In arguing that his trial counsel was ineffective, Evans cites three Supreme Court cases, which he claims show that his attorney should have been familiar with the use of adolescent brain development science and that it could be potentially relevant to Evans' defense. See Docket No. 2; S.A. 310. However, none of these cases support Evans' position. First, as the Appeals Court pointed out, at least one of the cases, Miller v. Alabama, 567 U.S. 460 (2015), postdates Evans' conviction by a year, and, therefore, was beyond what counsel could have been expected to know at the time of trial. See Ouber, 293 F.3d at 25. ("[C]ounsel's performance must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented."). Of the other two cases cited by Evans, only Graham v. Florida, 560 U.S. 48, 74 (2010) mentions adolescent brain development science. Evans, 87 Mass. App Ct. 1104 at *2.

Second, even if Evans' counsel had been aware of the Supreme Court decisions, none stand for the novel rule that Evans suggests the state court should have adopted. As the Appeals Court noted, the "Supreme Court has found science of the type proffered by [Evan's] expert relevant to legal analysis in some contexts." Evans, 87 Mass. App Ct. 1104 at *2. However, the Supreme Court has referred to adolescent brain development evidence in the context of sentencing of juveniles only. See Graham, 560 U.S. at 74 (sentencing a juvenile to life imprisonment without parole for a non-homicide crime violated the Eighth Amendment); Miller 567 U.S. at 488. While the Appeals Court stated that Evans' argument was "interesting and potentially important," it correctly found that his claim failed on its procedural posture. In a habeas action, this becomes an even greater hurdle for Evans to overcome given the deference accorded to not only counsel's professional judgment but to the state court's decision as well.

Yeboah-Sefah v. Ficco, 556 F.3d at 70 ("[T]o establish constitutionally ineffective assistance of counsel as a ground for federal habeas relief, the petitioner bears a doubly heavy burden.").

While Evans accurately asserts that Roper, Graham, and Miller described juveniles as "less culpable than adults," he extends the Supreme Court's reasoning too far. As the Appeals Court noted, Evans has not pointed to any decision, let alone one from the Supreme Court, in which such science was put before a jury in a self-defense or reasonable provocation case. Evans, 87 Mass. App Ct. 1104 at *2. "The absence of clearly established federal law is dispositive under § 2254(d)(1)." Brown v. Ruane, 630 F.3d 62, 69 (1st Cir. 2011); see L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002). "[N]ovelty alone – at least insofar as it renders the relevant rule less than 'clearly established' – provides a reason to reject it under AEDPA." Premo v. Moore, 562 U.S. 115, 126 (2011). As the First Circuit has stated, "[t]he Supreme Court has recently emphasized that whether federal law is clearly established for the purpose of the habeas statute is not simply a function of the clarity of the particular legal principle relied upon by a petitioner, but also of the clarity of that principle's application to the facts of the petitioner's case." Brown, 630 F.3d at 69.

Although Evans' counsel did not attempt to consult or retain an adolescent brain development expert, he did present evidence concerning Darosa's prior violent acts in accordance with Commonwealth v. Adjutant, 443 Mass. 649 (2005), a defense which Judge Chin noted was partially successful as the jury declined to convict Evans of murder. S.A. 312. This tactic bolstered Evans' claim that Darosa was the aggressor and shifted the jury's attention to his actions on the night of the shooting. However, if counsel had introduced adolescent brain evidence, it may have placed the jury's focus squarely on Evans, likely increasing the scrutiny with which it would assessed the reasonableness of his actions. "[E]ven if reasonable minds

14

could disagree about what defense strategy would have been best [in a given case]…the proper standard for [measuring] attorney performance is that of a reasonably effective assistance given the prevailing professional norms and consideration of all the circumstances relevant to counsel's performance." Pina v. Maloney, 565 F.3d 48, 56 (1st Cir. 2009). Here, the Appeals Court correctly found that Evans' trial lawyer met that standard and properly denied his ineffective assistance of counsel claim.

IV. RECOMMENDATION

For the foregoing reasons, I recommend that the Court DENY the Petitioner Phillip Evans Petition for Writ of Habeas Corpus in its entirety.

V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

      /s/ Jennifer C. Boal
      JENNIFER C. BOAL
      U.S. MAGISTRATE JUDGE